UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, | Case No. 2:12-cv-01298-MMD-GWF |
| Plaintiff, | ORDER |
| v. | (Pl.'s Motion to Dismiss – dkt. no. 65; Pl.'s Motion for Summary Judgment – dkt. no. 67; Pl.'s Motion for Hearing – dkt. no. 68.) |
| FELICIANO ROSSAL, *et al.,* | |
| Defendants. | |

**I.    SUMMARY**

In September 2014, the Court denied, without prejudice, a motion for summary judgment filed by Plaintiff Branch Banking and Trust Company ("BB&T"). (Dkt. no. 64.) Defendants Chano's Landscaping ("Chano's") and Feliciano Rossal had filed for bankruptcy several months earlier, which stayed this case with respect to them. (*See* dkt. nos. 58, 59, 62.) Defendant Onelia Rossal, however, did not file for bankruptcy or oppose the motion for summary judgment. (Dkt. no. 62.) Concerned about the possibility of creating prejudicial effects by deciding the motion for summary judgment during the stay, and in light of the fact that Onelia Rossal had not opposed the motion, the Court denied the motion, but gave Plaintiff leave to reassert it. (Dkt. no. 64.)

Plaintiff has since filed the three motions pending before the Court: a Motion for Voluntary Dismissal of Defendant Feliciano Rossal (dkt. no. 65), a Motion for Summary Judgment against Onelia Rossal (dkt. no. 67), and a Motion for a Deficiency Judgment Hearing (dkt. no. 68). Defendants have not responded to these pending motions. For the reasons discussed below, the motions are granted.

1    **II.**    **BACKGROUND**

2        **A.**    **Factual Background**

3          On December 12, 2005, Defendants Feliciano Rossal and Onelia Rossal

4  (together, "Borrowers") executed a promissory note ("Note") with a principal amount of

5  $281,000.00 and delivered it to Colonial Bank, N.A. (Dkt. no. 67 ¶ 1.) The Note was

6  secured by a Deed of Trust that encumbered real property in Clark County, Nevada ("the

7  Property"). (*Id.* ¶ 2.) Chano's guaranteed payments under the Note. (*Id.* ¶ 3.)

8          At some point thereafter, Colonial Bank, N.A., was converted from a national

9  banking association into a state-chartered bank. (*Id.* ¶ 4.) Colonial Bank, an Alabama

10  banking corporation, became its successor. (*Id.*) In August 2009, Alabama state officials

11  closed Colonial Bank; the Federal Deposit Insurance Corporation ("FDIC") was named

12  the receiver. (*Id.* ¶ 5.) The FDIC, in turn, assigned its rights under the Note, Deed of

13  Trust, and other loan documents to Plaintiff BB&T. (*Id.* ¶¶ 6–7.)

14          The Borrowers defaulted on the Note in December 2010. (*Id.* ¶ 8.) At a non-

15  judicial trustee's sale in February 2012, Plaintiff purchased the Property through a credit

16  bid of $144,000.00. (*Id.* ¶ 9.) The sale only partially compensated for the loan's

17  outstanding balance. (*Id.* ¶ 10.)

18        **B.**    **Procedural Background**

19          Plaintiff initiated this lawsuit on July 23, 2012, alleging a deficiency against the

20  Borrowers, a breach of guaranty against the Guarantor, and a breach of the covenant of

21  good faith and fair dealing against the Borrowers and the Guarantor. (Dkt. no. 1.)

22  Defendants filed a motion to dismiss for lack of standing in September 2012 (dkt. no. 7),

23  which the Court denied. (Dkt. no. 31.) The parties then filed several motions for summary

24  judgment. (Dkt. nos. 33, 34, 35, 39.) In April 2014, the Court granted Defendants'

25  attorney's motion to withdraw.[1] (Dkt. no. 54.)

26  ///

27  ///

28  _____

        [1]Ms. Rossal has not obtained replacement counsel and is proceeding *pro se.*

The next month, in May 2014, Feliciano Rossal and Chano's notified the Court that they had filed for bankruptcy. (Dkt. nos. 58, 59, 62.) The Court heard oral argument on the pending motions for summary judgment and for a deficiency hearing on September 23, 2014. (Dkt. no. 64.) Onelia Rossal did not appear for the hearing. In light of her absence and the recent bankruptcy filings, the Court denied the parties' summary judgment motions without prejudice, and denied Plaintiff's motion for a deficiency hearing as moot. (*Id.*) Plaintiff moved for voluntary dismissal of Chano's in August 2015, which the Court granted. (Dkt. nos. 70, 71.)

The Court now addresses Plaintiff's reasserted Motion for Summary Judgment and Motion for a Deficiency Judgment Hearing (dkt. nos. 67, 68), as well as Plaintiff's Motion to Dismiss Defendant Feliciano Rossal (dkt. no. 65).

### III.    MOTION TO DISMISS

Plaintiff seeks voluntary dismissal of Plaintiff Feliciano Rossal without prejudice under Rule 41 of the Federal Rules of Civil Procedure. (Dkt. no. 65.) Rule 41 allows for voluntary dismissal "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Courts may grant voluntary dismissal "so long as the defendant will not be prejudiced, or unfairly affected by dismissal." *Steve*doring Servs. of Am. v. Armilla Int'l *B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) (citation omitted). Feliciano Rossal was active in this lawsuit before he filed for bankruptcy. However, in light of the current stay, the Court finds that voluntary dismissal would not prejudice or unfairly affect Mr. Rossal. The Court therefore grants the Motion to Dismiss (dkt. no. 65). Defendant Feliciano Rossal is terminated from this case.

### IV.    MOTION FOR SUMMARY JUDGMENT

According to Plaintiff, the undisputed facts demonstrate that it is entitled to a deficiency judgment against Onelia Rossal. Plaintiff asserts that Ms. Rossal defaulted on her loan, that the Property's sale failed to cover the loan's outstanding balance, and that Ms. Rossal is responsible for paying that balance. Plaintiff further argues that a provision of Nevada's anti-deficiency statutes, formerly codified at NRS § 40.459(1)(c), cannot bar

Plaintiff's recovery because it is preempted by federal law. (Dkt. no. 67 at 6-7; 10-13.) The Court agrees.

### A.   Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. See id. at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Aydin Corp. v. Loral Corp., 718 F.2d 897, 902 (9th Cir. 1983) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fishbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that

there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Finally, the Court notes that Ms. Rossal is proceeding *pro se*. Even as a *pro se* litigant, Ms. Rossal must comply with the applicable procedural rules. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam). The Court cannot, however, grant the Motion solely because Ms. Rossal failed to file an opposition brief. Rather, as noted above, the Court will grant summary judgment only where a party shows that no genuine dispute of material fact exists, and where that party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (affirming grant of summary judgment because moving party demonstrated that a claim was frivolous, but noting that the district court had erred in granting summary judgment for non-moving party's failure to file an opposition).

## B.    Discussion

Section 40.455(1) of the Nevada Revised Statutes allows creditors to obtain deficiency judgments where "there is a deficiency of the proceeds of [a] sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust." NRS § 40.455(1), *amended by* 2015 Nev. Stat., Ch. 518, Sec. 8 (Westlaw). Here, Plaintiff offers undisputed evidence to establish such a deficiency. First, Plaintiff offers a signed copy of the Note, in which Ms. Rossal (along with Feliciano Rossal) agreed to pay a principal amount of $281,000 between December 2005 and December 2010. (Dkt. no. 67 at 23-24.) Plaintiff has also reproduced a copy of the corresponding Deed of Trust, which lists Colonial Bank, N.A., as the lender and beneficiary. (*Id.* at 26-42.) Next,

1    Plaintiff offers a copy of an assignment from the FDIC to Plaintiff; the document assigns

2    to Plaintiff all of the FDIC's rights to and interests in deeds of trust, promissory notes,

3    and other instruments "owned by Colonial Bank [or held by its predecessors] . . . as of

4    August 14, 2009 in the Public Records of the counties of the State of Nevada." (*Id.* at

5    49.) Plaintiff, in exchange, gave "consideration of the sum of [$10.00], and other good

6    and valuable consideration." (*Id.*) Plaintiff's exhibits also include an allonge assigning

7    Ms. Rossal's Promissory Note from the FDIC to Plaintiff on August 14, 2009. (*Id.* at 59.)

8    Finally, Plaintiff reproduces a Trustee's Deed, which indicates that the Property was sold

9    for a credit bid of $144,000 at a trustee's sale on February 29, 2012. (*Id.* at 61-63.)

10        Together, these documents suggest that the balance remaining due to Plaintiff

11   exceeds the amount produced by the trustee's sale. (*See id.* at 21 (declaration of Peter

12   Nugent, a Senior Vice President of Plaintiff, noting that the total indebtedness under the

13   Note on February 29, 2012, was $243,037.27).) Under the plain language of NRS

14   § 40.455(1), Plaintiff has demonstrated a deficiency.

15        At the time of the Property's sale in February 2012, however, NRS § 40.459(1)(c)

16   ("Subsection (1)(c)") limited the amount that a successor creditor could recover through

17   a deficiency judgment. Subsection (1)(c) then[2] read:

18        If the person seeking the judgment acquired the right to obtain the
         judgment from a person who previously held that right, [a deficiency
19        judgment could be limited to] the amount by which the amount of the
         consideration paid for that right exceeds the fair market value of the
20        property sold at the time of sale or the amount for which the property was
         actually sold, whichever is greater.
21

22   2011 Nev. Stat. 1743. Under this provision, a successor creditor could only recover the

23   difference between the consideration it paid for the right to a deficiency judgment and

24   the actual sale price or fair market value of a property. Thus, unless a successor creditor

25

26        [2]Section 40.459 was amended and reorganized in May 2015. *See* 2015 Nev. Stat.,
     Ch. 149, Sec. 1 (Westlaw) (codified as amended at NRS § 40.459). Subsection (1)(c)
27   now appears in NRS § 40.459(3)(c), which limits a successor creditor's recovery after
     obtaining a deficiency judgment on a "property upon which the debtor, guarantor or
28   surety maintains his or her principal residence." NRS § 40.459(3)(c).

1 paid more for the right to obtain a deficiency judgment than a property's fair market or

2 sale value, Subsection (1)(c) foreclosed the successor creditor from recovering a

3 deficiency.

4      The remaining issue in this case, then, is whether Subsection (1)(c) applies to

5 Plaintiff. Plaintiff contends that Subsection (1)(c) interferes with the federal statutory

6 scheme through which the FDIC protects the assets of failed banks. (Dkt. no. 67 at 10-

7 13.) According to Plaintiff, this federal scheme preempts Subsection (1)(c) under the

8 Supremacy Clause of the United States Constitution, such that Subsection (1)(c) cannot

9 bar Plaintiff's recovery in this case. (*See id.* (quoting U.S. Const. art. VI, cl. 2)); *see Chae*

10 *v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) ("Federal preemption occurs when: (1)

11 Congress enacts a statute that explicitly pre-empts state law; (2) state law actually

12 conflicts with federal law; or (3) federal law occupies a legislative field to such an extent

13 that it is reasonable to conclude that Congress left no room for state regulation in that

14 field." (quoting *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000))).

15      In April 2015, the Nevada Supreme Court addressed this issue, concluding that

16 federal law — specifically, the federal Financial Institutions Reform, Recovery and

17 Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1811 *et seq.* — preempts Subsection

18 (1)(c) from applying to deficiency actions brought by a creditor to which the FDIC has

19 transferred a loan. *Munoz v. Branch Banking*, 348 P.3d 689, 692–93 (Nev. 2015). There,

20 just as in this case, the plaintiff creditor had obtained rights to a loan from the FDIC,

21 which had previously assumed the loan while acting as the receiver of a failed bank. *Id.*

22 at 690–91. After noting that, under FIRREA, the FDIC's duty as a receiver is to protect

23 depositors by liquidating a bank's assets, the court further stated that "[t]o assist the

24 FDIC in carrying out this duty, federal law provides special status to the FDIC's

25 assignees so as to maintain the value of the assets they receive from the FDIC." *Id.* at

26 692. But Subsection (1)(c) forecloses such "special status" assignees from recovering a

27 deficiency judgment that exceeds what they paid for the loan. *Id.* Accordingly, the court

28 reasoned, Subsection (1)(c) "conflicts with FIRREA because it 'would have a deleterious

1    effect on the FDIC's ability to protect the assets of failed banks.'" *Id.* (quoting *Fed.*
2    *Deposit Ins. Corp. v. Newhart*, 892 F.2d 47, 50 (8th Cir. 1989)).

3    The Court is persuaded by this reasoning and applies it here. Plaintiff obtained its
4    rights to the loan from the FDIC. The FDIC, in turn, acquired the loan in its role as a
5    receiver pursuant to FIRREA. Because Subsection (1)(c), as interpreted by the Nevada
6    Supreme Court, would limit Plaintiff's deficiency judgment to no more than the
7    consideration it paid to acquire the loan, the Court finds that Subsection (1)(c) does not
8    limit Plaintiff's recovery. Rather, as applied to this case, the Court finds that federal law
9    preempts Subsection (1)(c) from imposing such a limitation. The Court will therefore
10   grant Plaintiff's request for summary judgment with respect the deficiency claim against
11   Ms. Rossal.[3]

12   **V.    MOTION FOR DEFICIENCY JUDGMENT HEARING**

13   Plaintiff additionally requests a hearing to determine the Property's fair market
14   value as of the date it was sold. (Dkt. no. 67 at 14-15.) Because the Court grants
15   summary judgment with regard to Plaintiff's deficiency claim, the Court will set a hearing.

16   **V.    CONCLUSION**

17   The Court notes that Plaintiff made several arguments and cited to several cases
18   not discussed above. The Court has reviewed these arguments and cases and
19   determines that they do not warrant discussion as they do not affect the outcome of the
20   motions.

21   It is ordered that Plaintiff's Motion to Dismiss (dkt. no. 65) is granted.

22   It is further ordered that Plaintiff's Motion for Summary Judgment (dkt. no. 67) is
23   granted with respect to Plaintiff's deficiency claim.

24   ///

25   ────────────────────
26   [3]Plaintiff refers to this case as a "straightforward, commonplace breach of contract case" in its Motion for Summary Judgment. (Dkt. no. 67 at 2.) The Complaint, however, does not specifically allege a breach of contract claim. (*See* dkt. no. 1.) The Court will
27   not grant summary judgment on a claim that has not been alleged. Nevertheless, the Court finds that Plaintiff is entitled to judgment as a matter of law on the deficiency claim,
28   and will grant summary judgment on that basis.

It is further ordered that Plaintiff's Motion for a Deficiency Judgment Hearing (dkt. no. 68) is granted. The Court will set a hearing to determine the fair market value of the Property at the time it was sold.

DATED THIS 29th day of September 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE