UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRANCH BANKING AND TRUST COMPANY,

        Plaintiff,

v.

FELICIANO ROSSAL, *et al.*,

        Defendants.

Case No. 2:12-cv-01298-MMD-GWF

ORDER

**I.    SUMMARY**

The Court issued judgment in favor of Plaintiff Branch Banking and Trust ("BB&T" and against Defendant Onelia Rossal ("Defendant") on November 23, 2015, and issued an Order granting BB&T's motion for attorneys' fees on September 26 2016 ("Fee Award"). (ECF Nos. 77, 84.) About a year later after entry of judgment, on November 21, 2016, Defendant moved to vacate the judgment and Fee Award. (ECF No. 85.) The Court has reviewed BB&T's response (ECF No. 88) and Defendant's reply (ECF No. 91). Because the Court finds that the issue raised in the reply brief relating to a purposed defense to the entry of judgment to be irrelevant to the Court's consideration of whether to vacate the judgment, the Court denies BB&T's motion to file a sur-reply to address this issue (ECF No. 92). For the reasons discussed below, Defendant's Motion to Vacate Judgments ("Motion") (ECF No. 85) is denied.

## II. BACKGROUND

### A. Factual Background

On December 12, 2005, Defendants Feliciano Rossal ("Rossal") and Onelia Rossal (together, "Borrowers") executed a promissory note ("Note") with a principal amount of $281,000.00 and delivered it to Colonial Bank, N.A. (ECF No. 67 at 1.) The Note was secured by a Deed of Trust that encumbered real property in Clark County, Nevada ("the Property"). (*Id.* at 2.) Defendant Chano's Landscaping, Inc. ("Chano" or "Gurantor") guaranteed payments under the Note. (*Id.* at 3.)

At some point thereafter, Colonial Bank, N.A., was converted from a national banking association into a state-chartered bank. (*Id.* at 4.) Colonial Bank, an Alabama banking corporation, became its successor. (*Id.*) In August 2009, Alabama state officials closed Colonial Bank; the Federal Deposit Insurance Corporation ("FDIC") was named the receiver. (*Id.* at 5.) The FDIC, in turn, assigned its rights under the Note, Deed of Trust, and other loan documents to BB&T. (*Id.* at 6–7.)

The Borrowers defaulted on the Note in December 2010. (*Id.* at 8.) At a non-judicial trustee's sale in February 2012, Defendant purchased the Property through a credit bid of $144,000.00. (*Id.* at 9.) The sale only partially compensated for the loan's outstanding balance. (*Id.* at 10.)

### B. Procedural Background

Plaintiff initiated this lawsuit on July 23, 2012, alleging a deficiency against the Borrowers, a breach of guaranty against the Guarantor, and a breach of the covenant of good faith and fair dealing against the Borrowers and the Guarantor. (ECF No. 1.) Defendants filed a motion to dismiss for lack of standing in September 2012 (ECF No. 7), which the Court denied. (ECF No. 31.) The parties then filed several motions for summary judgment. (ECF Nos. 33, 34, 35, 39.)

On April 10, 2014, the Court granted Defendants' attorney's motion to withdraw. (ECF No. 54.) The Court directed the Clerk of the Court to serve Defendants with a copy of the April 2014 Order granting their counsel's motion to withdraw at their last known

addressed and to add these addresses to the civil docket. (*Id.*) The Order identified two separate last known addresses for Defendant in Las Vegas: 7735 Dean Martin Drive[1]; and 1462 Marion Drive. (*Id.* at 2.) The effect of the April 2014 Order is that until any of the Defendants appear through counsel, orders issued by the Court would be mailed to Defendants' last known addresses.

The next month, in May 2014, Rossal and Chano's notified the Court that they had filed for bankruptcy. (ECF Nos. 58, 59, 62.) On July 17, 2014, BB&T filed a status report ("Status Report"), notifying the Court that it cannot take any action against Rossal and Chano because of the automatic stay, but that it intends to seek judgment against Defendant because Defendant "has not filed a bankruptcy petition, and in fact is a creditor" in Rossal's bankruptcy case[2]. (ECF No. 61.) In response, on July 21, 2014, the Court stayed the case with respect to Rossal and Chano, but declared that the action is not stayed with respect to Defendant. (ECF No. 62.)

On September 23, 2014, the Court heard oral argument on the pending motions for summary judgment and for a deficiency hearing on September 23, 2014. (ECF No. 64.) Defendant did not appear for the hearing. In light of her absence and the recent bankruptcy filings, the Court denied the parties' summary judgment motions without prejudice, and denied Plaintiff's motion for a deficiency hearing as moot. (*Id.*) Plaintiff moved for voluntary dismissal of Chano's in August 2015, which the Court granted. (ECF Nos. 70, 71.)

On November 17, 2014, Plaintiff again moved for summary judgment against Defendant and a deficiency hearing, and moved to dismiss Rossal. (ECF Nos. 67, 68, 65.) On September 29, 2015, the Court granted Plaintiff's motion to dismiss Rossal, motion for summary judgment as to the deficiency claim against Defendant and set a hearing to determine the fair market value of the Property. (ECF No. 72.) The fair market value

---

[1] This is the same address as one of the two last known addresses for Rossal. (ECF No. 54 at 1.)

[2] The certificate of service shows the Status Report was sent to Defendant at one of the two last known addresses identified in the April 2014 Order: 1462 Marion Drive. (ECF No. 61 at 3.)

3

hearing was held on October 28, 2015. (ECF No. 75.) On November 23, 2015, the Court entered judgment against Defendant. (ECF No. 77.) The next month, on December 7, 2015, BB&T moved for attorney's fees (ECF No. 78), which the Court granted on September 26, 2016 (ECF No. 84.)

On November 21, 2016, Defendant, through counsel, moved to vacate the judgment and the Fee Award. (ECF No. 85.)

**III. DISCUSSION**

Defendant argues that the Court should grant her requested relief pursuant to Fed. R. Civ. P 60(b)(1) because her failure to appear in this case was due to "excusable neglect." (ECF No. 85 at 5-9.) She asserts that she thought the obligation owed to BB&T was discharged in Rossal's bankruptcy and she only recently learned of the entry of the judgment because she was not living at the service address by the time she was served with BB&T's Status Report[3]. (*Id.*) As to this latter point, BB&T countered that Defendant failed to identify when she moved or whether she had her mail forwarded to her. (ECF No. 88 at 13.)

In order to preserve the finality of judgments, the Federal Rules of Civil Procedure limit a party's ability to seek relief from a final judgment. *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009). Fed. Civ. P. 60(b) lists six grounds under which a party may seek relief from a final judgment. Defendant relies on Rule 60(b)(1), which "must be made within a reasonable time—and . . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

Here, Defendant's Motion under Rule 60(b)(1) is one day shy of a year from the entry of judgment but over a year from the granting of summary judgment upon which the judgment was based. Thus, it is not clear that Defendant's Motion is timely because vacating the judgment necessarily requires vacating the order granting summary judgment which the Court issued on September 29, 2015. (ECF No. 72.) Even accepting that

---

[3] The service address was one of the two listed in the Court's Order: 1462 Marion Drive. (ECF No. 85-1 at 8.)

4

Defendant's Motion is timely under Rule 60(b)(1), the delay in bringing the Motion is certainly concerning, particularly when Defendant does not explain when or how she learned of the entry of judgment[4]. Defendant states in her declaration that she "only recently learned about the judgments." (ECF No. 85-1 at 15.)

More importantly, Defendant fails to make a showing that relief from the judgment is warranted in this case. To determine whether the party seeking relief under Rule 60(b)(1) satisfies the "excusable neglect" equitable standard, courts consider four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. United States Postal Service,* 231 F.3d 1220, 1223-24 (9th Cir. 2000). These four factors are "not exclusive, but that they provide a framework with which to determine whether missing a filing deadline constitutes 'excusable' neglect." *Id.* (citation and internal quotation marks omitted). The Court finds that a balancing of these factors compel denial of Defendant's Motion.

First, the Court agrees with BB&T that the danger of prejudice to BB&T is significant. BB&T litigated the merits of its deficiency claim against Defendant for about fifteen months—from April 2014 when the Court granted Defendants' counsel's motion to withdraw to November 23, 2015 when the Court entered judgment. It took another ten months for BB&T to obtain the Fee Award. (ECF Nos. 78, 84.) Vacating the judgment and Fee Award would result in further delay and would necessarily result in prejudice to BB&T.

Second, the length of the delay here is significant. As noted, Defendant waited almost a year after entry of judgment to bring her Motion and asserted vaguely that she "only recently" learned of the judgment. (ECF No. 85-1 at 15.) But the delay here is not limited to the virtual year delay in bringing the Motion, it includes the delay from the time the April 2014 Order was issued granting Defendant's former counsel's motion to withdraw

---

[4] Ironically, Defendant places the blame on BB&T as to why she "only recently" discovered the judgment, positing that she would have learned of it sooner had BB&T attempted to collect on the judgment. (ECF No. 91 at 4.)

1  to the entry of judgment in November 2015 and the Fee Award in September 2016.
2  Between the April 2014 Order and the September 2016 Fee Award, BB&T litigated the
3  merits of the deficiency claim, presented evidence of the fair market value of the Property
4  and presented evidence supporting for its fees requested.

Third, the reason for the delay is suspect at worst and weak at best. Defendant asserts that she thought the obligation owed to BB&T was discharged in Rossal's bankruptcy and had not received the Status Report or the Court's July 21, 2014 Order to know that the case was not stayed against her because she was no longer at the service address of 1462 Marion Drive. (ECF No. 85 at 5-9; ECF No. 85-1 at 8, 9.) However, as BB&T aptly pointed out, Defendant did not address when she moved or whether she had her mail forwarded to her. (ECF No. 88 at 13.) And, if she failed to have her mail forwarded to her, she failed to explain the reason for not doing so. Moreover, the Court's July 21, 2014 Order, and all subsequent orders issued by the Court, would have been sent to both the 1462 Marion Drive address and the other last known address identified in the April 2014 Order. Yet, none of these orders, including the July 21, 2014 Order, the order granting summary judgment and the judgment, were returned to the Court as undeliverable. For these reasons, the Court questions Defendant's explanation for why she failed to make an appearance in this case until almost a year after the entry of judgment.

The fourth factor considers whether Defendant acted in good faith. Because of the length of delay and the weak reason for the delay, the Court cannot find that Defendant has acted in good faith.

**V.  CONCLUSION**

The Court notes that Defendant made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion.

It is ordered that Defendant's Motion to Vacate Judgments (ECF No. 85) is denied.

It is further ordered that Plaintiff's motion to file sur-reply (ECF No. 92) is denied.

DATED THIS 22nd day of August 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE